UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

KIMBERLY FELICIANO                              CIV ACTION NO:
          Plaintiff

V.                                             JULY    , 2025

THE JUDICIAL BRANCH OF
THE STATE OF CONNECTICUT
and SHANNA O'DONNELL
          Defendants



JUL 16 2025 PM3:00
FILED-USDC-CT-HARTFORD

**COMPLAINT**

I.      **JURISDICTION AND VENUE**

1.      Jurisdiction is conferred by Title VII of the Civil Rights Act of 1964 as amended, 28 U.S.C. §§ 1331, and 42 U.S.C. § 1983 and the 14th Amendment to the U.S. Constitution, 28 U.S.C. § 1343(a)(3) and (c) the principles of supplemental jurisdiction.

2.      Venue is properly in this district pursuant to 28 U.S.C. § 1391(b).

3.      Plaintiff commenced proceedings before the Equal Employment Opportunity Commission ("EEOC") and the Connecticut Commission on Human Rights ("CHRO")on or about May 29 , 2024, and received release of jurisdiction letters, from the EEOC dated May 7, 2025, and from the CHRO dated May 2, 2025.

II.     **PARTIES**

3.      The Plaintiff is a brown-skinned, African-American woman, born on September 11, 1966, and at the time of the events described herein was 57 years old, and is deaf in the left

1

ear.

4.    A.    Defendant The Judicial Branch of the State of Connecticut was at all relevant times the employer of Plaintiff.

B..    Defendant Shanna O'Donnell, a white female, of about 50 years of age, was at all relevant times the supervisor of Plaintiff.  She is sued as an individual acting under the color of law.

III.    STATEMENT OF FACTS

5 .    Plaintiff was hired by the Defendant Judicial Branch for the position of Call Center Clerk at 80 Washington Street, Hartford, Connecticut, and commenced work on the 23rd day of February, 2024.  On the same day, there also commenced work in the same positions Eric Mendez, an Hispanic male of about 40 years of age, and Ayanna Chambers, a brown-skinned African-American woman, of about 30 years of age. Neither Mendez nor Chambers have any disabilities.  Together the three constituted a new hire cohort.

6 .    The cohort all worked at the training stage during the period of Plaintiff's employment.

7,    Before commencing this employment, Plaintiff had eleven (11) years of experience as a legal secretary at the law firm of Miniter and Associates, in Hartford, Connecticut, from 2000 to 2011. a firm specializing in employee discrimination lawsuits. Plaintiff helped prepare cases for trial, attended depositions and trials, and frequently filed various pleadings in all of the state and federal courts located in Hartford.

8.    Thereafter, Plaintiff engaged in a year long program of paralegal studies at

Bradford Institute in Windsor, Connecticut, during which time Plaintiff engaged in a voluntary clerkship at the Superior Court of Connecticut located in Vernon, Connecticut.

9.      Thereafter, Plaintiff worked as an administrative assistant at the following law firms: Bendett & McHugh, in Farmington and McGann, Barlett and Brown in East Hartford.

10.     Mendez was a bail bondsman before coming to his current position.  Chambers worked in a call center, but not one associated with the law.

11.     Soon after commencement of work, Plaintiff and the other members of the cohort were given instructions by personnel from Human Resources to fill out certain documents, and stated that all documents not completed that day were to be returned in an envelope which was provided and they would be sent to their proper destination. The form  to join the relevant union, AFCSME Local 749 was provided by a union representative.  Plaintiff elected to join the union, filled out the paperwork for that, and as instructed, delivered placed it in the envelope with the other papers.  The form never reached the union and Plaintiff has been wrongfully deprived of the assistance of the union, therefore, throughout these events.  The whereabouts of that paperwork is unknown to Plaintiff.

12.     On information and belief, Plaintiff believes that this is a practice used by the Employer or Employer's representatives designed to minimize participation in union activity, especially during periods of probation.

13.     During initial classes and training sessions in the first two weeks, Plaintiff was often complimented by the instructors for asking very good questions.  About three weeks into her employment, Rosa T., a trainer, told Plaintiff that she was performing well.  On another occasion, Rafealla T. also told Plaintiff that she was doing a great job.  At about that time,

3

O'Donnell, Plaintiff's supervisor, stated to Plaintiff that she was hearing very good things about Plaintiff's work

14.    At no time did O'Donnell or any other representative of Employer make any negative comments either orally or in writing about the performance of Plaintiff. At no time did O'Donnell or any other representative of Employer indicate that Plaintiff needed to improve her performance. Comments about improvement were only made to the cohort as a whole.

15.    O'Donnell treated Plaintiff in a negatively disparate manner from the way she treated the other members of the cohort. In the morning, she would come in and say hello to the others, but would glare at Plaintiff and roll her eyes at her. This was a daily practice. It made Plaintiff extremely uncomfortable and created a hostile work environment. O'Donnell's animosity to Plaintiff and the hostile work environment O'Donnell created were demonstrated physically on or about April 4th, when Plaintiff opened a file cabinet drawer in the break room and O'Donnell dashed across the room, in the presence of Mendez, to slam the drawer shut on Plaintiff's fingers. Myra Johnson, a supervisor, had previously told Plaintiff that she could use materials in that drawer.

16.    O'Donnell knew that Plaintiff is deaf in her left ear. The subject came up in a training session, at which time, O'Donnell stated that she would have to do something to accommodate Plaintiff, especially since call center employees wear headsets as part of their work. However, O'Donnell never did anything to accommodate Plaintiff.

17.    The only factors which could distinguish Plaintiff from the other members of the cohort and from O'Donnell were (1) race (as to Mendez and O'Donnell), (2) age (as to all of them) (3) Plaintiff's greater legal experience (at least as to the cohort), and (4) her disability (as

to all of them).

18.    On the 11th of April, 2024, at approximately 4:40 PM while the other employees of the call center were still at work, O'Donnell called Plaintiff into her office and handed her a termination slip, sarcastically asking "Do you need glasses?"  She then proceeded, again while the other employees were still at work, to have three marshals escort Plaintiff from the premises, in an attempt to utterly humiliate her and cause maximum pain and suffering, instead of waiting until the others left at 5 PM.

19.    The reasons stated in the dismissal letter for termination were the following: (1) Failure to acquire skills and knowledge necessary to meet job requirements and perform required duties for this position; (2) Failure to consistently demonstrate progress towards acquiring skills and knowledge necessary to meet job requirements and perform required duties for this position.

20.    Those reasons were false and pretextual, hiding animosity of O'Donnell to Plaintiff due to her age (and, as a consequence, her legal experience), her race, her gender,and her disability.

21.    On Monday, April 15th, Chambers was released from training and allowed to work independently.  On Tuesday, April 16th, Mendez was released from training and allowed to work independently, but on Thursday, April 18th, he was determined not to have learned enough from training and returned to training status.  He was not terminated as Plaintiff was.

22.    Even if the allegations in the dismissal letter were true, Grievant was given disparate treatment compared to Mendez.

23.    Defendants actions were willful, reckless or wanton and undertaken without regard to the rights of Plaintiff.

24.    On information and belief, Defendants engage in disparate treatment on the basis of race and color at the Call Center.

## IV.    CAUSES OF ACTION

### A.    FIRST CLAIM FOR RELIEF - 42 U.S.C. §1983 , VIOLATION OF EQUAL PROTECTION UNDER THE 14TH AMENDMENT TO THE CONSTITUTION

25.    Defendants acted under color of state law and intended to deprive Plaintiff of her rights, privileges and immunities under federal law on the basis of her race.

26.    Defendants acted willfully, wantonly and maliciously.

27.    On information and belief, Defendants acted in pursuance of a systematic custom or policy of discriminating against or harassing minority members of this section of the Judicial Department.

28.    Defendants' actions constitute a violation of 42 U.S.C.§1983 and the 14th Amendment to the US Constitution.

29.    As a result of Defendants' violation of 42 U. S .C. §1983 and the 14th Amendment to the US Constitution., Plaintiff has incurred, and continue to incur, lost wages, lost benefits, and costs and expenses, including legal fees and the cost of bringing this action.

30.    As a further result of Defendants' conduct, Plaintiff has suffered, and continues to suffer, permanent loss of career opportunities, severe and extreme emotional distress, including loss of self-esteem, humiliation and embarrassment.

**B.    SECOND CLAIM FOR RELIEF - 42 U.S.C. §1983,**

**HOSTILE WORK ENVIRONMENT**

31.    Defendants acted under color of state law and intended to deprive Plaintiff of her rights, privileges and immunities under federal law on the basis of her race.

32.    Defendants acted willfully, wantonly and maliciously.

33.    Defendants's actions created an on-going hostile work environment based on race at the Call Center.

34.    Defendants' actions constitute a violation of 42 U.S.C.§1983.

35.    As a result of Defendants' violation of 42 U. S .C. §l983, Plaintiff has incurred, and continue to incur, lost wages, lost benefits, and costs and expenses, including legal fees and the cost of bringing this action.

36.    As a further result of Defendants' conduct, Plaintiff has suffered, and continues to suffer, permanent loss of career opportunities, severe and extreme emotional distress, including loss of self-esteem, humiliation and embarrassment.

**C.    THIRD CLAIM FOR RELIEF 42 U.S. CODE § 2000e-2 (a) and (d) -**

**UNLAWFUL EMPLOYMENT PRACTICES – RACE AND GENDER**

37.    At all relevant times, Plaintiff was an employee and Defendant Judicial Branch was an employer, and Defendant O'Donnell was an agent of the employer, all within the definitions of 42 U. S. Code § 2000e.

38.    Defendants wrongfully deprived Plaintiff of the privileges of employment, because of her race, color, or sex or a combination of such causes.

39.    . As a result of Defendants' violation of 42 U.S. Code § 2000e-2 (a) and (d),

Plaintiff has incurred, and continue to incur, lost wages, lost benefits, and costs and expenses, including legal fees and the cost of bringing this action.

40. As a further result of Defendants' conduct, Plaintiff has suffered, and continues to suffer, permanent loss of career opportunities, severe and extreme emotional distress, including loss of self-esteem, humiliation and embarrassment.

**D.    FOURTH CLAIM FOR RELIEF 42 U.S. CODE § 12101 ET SEQ. - UNLAWFUL EMPLOYMENT PRACTICES – DISABILITY**

41. At all relevant times, Plaintiff was an employee and Defendant Judicial Branch was an employer, and Defendant O'Donnell was an agent of the employer, all within the definitions of 42 U. S. Code § 12111.

42. Plaintiff has a disability, deafness in her left ear, within the meaning of the definition in 42 U. S. Code § 12102.

43. Defendants discriminated against Plaintiff in violation of the provisions of 42 U. S. Code § 12112.

44. As a result of Defendants' violation of 42 U. S .C. 12101 et seq., Plaintiff has incurred, and continue to incur, lost wages, lost benefits, and costs and expenses, including legal fees and the cost of bringing this action.

45. As a further result of Defendants' conduct, Plaintiff has suffered, and continues to suffer, permanent loss of career opportunities, severe and extreme emotional distress, including loss of self-esteem, humiliation and embarrassment.

E.    **FIFTH CLAIM FOR RELIEF 29 U.S. CODE § 621 ET SEQ. -**

**UNLAWFUL EMPLOYMENT PRACTICES – AGE DISCRIMINATION**

46.    At all relevant times, Plaintiff was an employee and Defendant Judicial Branch was an employer, and Defendant O'Donnell was an agent of the employer, all within the definitions of 29 U. S. Code § 630.

47.    Plaintiff is more than 40 years of age and is within the protected category of the Age Discrimination in Employment Act as provided in 29 U. S. Code § 631.

48.    Defendants' actions constitute a violation of the provisions of 29 U. S. Code § 623.

49.    As a result of Defendants' violation of 29 U. S .C. § 621 et seq., Plaintiff has incurred, and continue to incur, lost wages, lost benefits, and costs and expenses, including legal fees and the cost of bringing this action.

50.    As a further result of Defendants' conduct, Plaintiff has suffered, and continues to suffer, permanent loss of career opportunities, severe and extreme emotional distress, including loss of self-esteem, humiliation and embarrassment.

F.    **SIXTH CLAIM FOR RELIEF CONN. GEN. STAT. §46a-60(b)(1) -**

**UNLAWFUL EMPLOYMENT PRACTICES**

51.    Plaintiff is an employee pursuant to the provisions of Conn. Gen. Stat. § 46a-51(9) and Defendants are an employer pursuant to the provision of Conn. Gen. Stat. § 46a-51(10).

52.    Defendants' actions constitute a violation of the provisions of Conn. Gen. Stat. § 46a-60(b)(1) based on Plaintiff's race, or color, or sex, or physical disability, or a combination of those.

9

53. As a result of Defendants' violation of Conn. Gen. Stat. § 46a-60(b)(1), Plaintiff has incurred, and continue to incur, lost wages, lost benefits, and costs and expenses, including legal fees and the cost of bringing this action.

54. As a further result of Defendants' conduct, Plaintiff has suffered, and continues to suffer, permanent loss of career opportunities, severe and extreme emotional distress, including loss of self-esteem, humiliation and embarrassment.

## V.    REQUEST FOR RELIEF

WHEREFORE, the plaintiff prays for the following relief:

1. Reinstatement in her position as Call Center Clerk;

2. Compensatory Damages, including, but not limited to, back pay;

3. Punitive damages;

4. Statutory Damages;

5. Equitable Remedies;

6. Reasonable attorneys fees, if represented by legal counsel in the proceedings, costs and interest pursuant to 42 U.S.C. §1988 and 42 USC 2003e et seq.; and

7. Such other relief as the court deems just and appropriate.

## VI.    JURY DEMAND

Plaintiff hereby demand a trial by jury.


PLAINTIFF


KIMBERLY FELICIANO
52 West Eggleston St.,
Bloomfield, CT 06002
860-549-7603

11